UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

BARBARA WORRELL,

                          Plaintiff,

             v.

CITY OF NEW YORK, ADMINISTRATION FOR
CHILDREN SERVICES, RONALD E. RICHTER,
in his capacity as COMMISSIONER OF ACS OF
THE CITY OF NEW YORK,

                        Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
12-CV-6151 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Barbara Worrell filed an Amended Complaint on March 27, 2013, against

Defendants City of New York (the "City"), the Administration for Children Services ("ACS")

and Ronald Richter in his capacity as Commissioner of ACS, asserting claims of Fourteenth

Amendment due process violations, municipal liability, and state law claims of negligence,

negligent hiring and retention and negligent infliction of emotional distress.[1]  (Am. Compl. ¶¶ 1,

15–20.)  Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  At

oral argument on February 28, 2014, the Court granted Defendants' motion to dismiss Plaintiff's

---

[1]  Plaintiff initially filed her Complaint against New York State Office of Children and
Family Services ("OCFS"), Gladys Carrion in her official capacity as Commissioner of OCFS,
the New York State Central Register (the "Central Register"), Linda Joyce in her capacity as
Director of the Central Register, and Jane and John Doe, in their capacity as Supervisors and
Employees of the State Central Register (collectively the "State Defendants"), in addition to the
City, ACS and Richter.  After discussions at a pre-motion conference where counsel was
informed that Plaintiff's action against the State Defendants may be barred by *Finch v. N.Y.S.
Office of Children and Family Svcs.*, 861 F. Supp. 2d 145 (S.D.N.Y. 2012), Plaintiff
subsequently discontinued her claim against the State Defendants and filed her Amended
Complaint.  (*See* Docket Entry No. 1.)

due process and municipal liability claims for failure to state a claim.  The Court declined to exercise supplemental jurisdiction and dismissed Plaintiff's state law claims for negligence, negligent hiring and retention and negligent infliction of emotional distress without prejudice. The Court explains its decision below.

## I. Background

On January 25, 2010, Plaintiff was employed as a teacher at the Saratoga Family Inn Day Care in Queens, New York, (Am. Compl. ¶¶ 1, 13), when a report of abuse alleging that Plaintiff had injured and bruised a child's arms at the daycare was made to the State of New York which maintains a statewide central register for child abuse and maltreatment reports ("Central Register"), (*id.* ¶ 14).[2]  According to Plaintiff, ACS investigated the reported incident of abuse but did not properly conduct the investigation.  (*Id.* ¶ 15.)  As a result of the investigation by ACS of the report of abuse, on March 6, 2010, Plaintiff's name was placed on the Central Register as "indicated" for abuse/maltreatment of a child, suggesting that there was some basis to support the allegations of abuse.  (*Id.* ¶¶ 2, 15.)  As a result of the "indicated" finding by ACS, Plaintiff was supervised in her duties, and was not allowed to perform certain duties, including taking the children on trips or being a lead teacher.  (*Id.* ¶ 15.)  Plaintiff requested that the Central Register be amended and that the indication of abuse/maltreatment be changed to unfounded, but the "City" did not allow her to "properly appeal" the designation, even after ACS learned that Plaintiff could not have committed the abuse/maltreatment.  (*Id.* ¶¶ 2, 19–20.)

On June 6, 2011, Plaintiff had a hearing before an administrative law judge ("ALJ") to determine whether the information in the Central Register should be amended, (*id.* ¶ 2), that is,

---

[2]  In reviewing Plaintiff's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of the factual allegations in the Complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).

whether the allegations could be substantiated.[3]  After the hearing, the ALJ determined that while there was a documented injury to the child, ACS failed to prove by a fair preponderance of the evidence that Plaintiff committed the alleged maltreatment and caused the injury.  (Docket Entry No. 17-2, "ALJ Decision" at 5, 8.)  Plaintiff's name remained in the Central Register for a total of approximately 21 months until the ALJ's decision.  (Am. Compl. ¶ 17.)

Plaintiff alleges that the lengthy delay violated her due process rights by denying her the right to a fair hearing.  (*Id.* ¶¶ 2, 17.)  Plaintiff further alleges that she was denied due process when ACS failed to reinvestigate the report of abuse against her after finding out that their initial observations and investigation were incorrect.  (*Id.* ¶ 28(A).)  She argues that her due process rights were also violated when ACS workers discussed the allegations with unnamed individuals at the Saratoga Day Care Center, who conducted a "campaign of whispering" behind her back. (*Id.* ¶ 18.)  She further claims that ACS workers conspired with members of the daycare and authorities of New York State to place and keep her name on the Central Register.  (*Id.* ¶ 16.)  As a result of her name being placed on the Central Register, Plaintiff "could not apply for a job even if she wanted to because the 'Indication' would show," (*id.* ¶ 28(C)), she suffered physical and emotional harm, (*id.* ¶ 28(D)), humiliation, loss of professional reputation and potential income, (*id.* ¶ 21), and she no longer enjoyed her position as a nursery school teacher and "no longer desire[d] to 'foster' children," (*id.* ¶ 72).  Plaintiff also did not "reapply for her status as a

---

[3]  When the subject of an "indicated" report requests that it be amended, the OCFS conducts a review to determine "whether there is a fair preponderance of the evidence to find that the subject committed the act or acts of child abuse or maltreatment giving rise to the indicated report," and whether such acts could be relevant and reasonably related to child-care employment or licensing as defined by statute.  N.Y. Soc. Serv. Law § 422(8)(a)(ii).  If the report is not amended within ninety days of the request, the case is referred to an ALJ for a hearing.  *Id.* § 422(8)(b)(i).  The ALJ is required to amend the report to unfounded unless ACS demonstrates by a fair preponderance of the evidence that the subject of the report of abuse "committed the act or acts of child abuse or maltreatment giving rise to the indicated report," and that the act is relevant and reasonably related to child-care employment or licensing.  *Id.* § 422(8)(c)(ii).

foster parent" because of her inclusion on the Central Register.  (Oral Argument Transcript ("Tr.") 26:15–17.)  Plaintiff filed a municipal Notice of Claim on November 27, 2011, (*id.* ¶ 26), and commenced this action on December 14, 2012, (Docket Entry No. 1).

## II.  Discussion

### a.  Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must take all of the factual allegations in the complaint as true."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### b.  Claims Against ACS and Richter

Plaintiff sued ACS and Richter in his official capacity as Commissioner of ACS.

Plaintiff cannot maintain her suit against ACS or Richter since a suit against the Commissioner

of ACS is deemed to be a suit against ACS and ACS is not a suable entity.  Section 396 of the

New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties

for the violation of any law shall be brought in the name of the City of New York and not in that

of any agency, except where otherwise provided by law."  N.Y.C. Admin. Code & Charter

Ch. 16 § 396.  This provision has been construed to mean that ACS is not a suable entity, and

claims against ACS workers in their official capacities are deemed to be claims against ACS.

*See, e.g.*, *Allen v. Mattingly*, No. 10-CV-0667, 2011 WL 1261103, at *14 (E.D.N.Y. Mar. 29,

2011) (finding that where plaintiff sued the Commissioner of ACS, the attorney for ACS and an

ACS caseworker in their official capacities, "such claims are deemed to be claims against the

ACS, which lacks the capacity to sue or be sued"), *aff'd*, 478 F. App'x 712 (2d Cir. 2012);

*Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[T]he Court finds that

ACS, the NYPD Firearms Division, and the NYPD 46th Precinct, as agencies of the City, are not

suable entities and thus dismisses Emerson's claims against them." (citations omitted)); *Johnson*

*v. New York*, No. 04-CV-1070, 2007 WL 764514, at *5 (E.D.N.Y. Mar. 9, 2007) ("[T]he action

filed against ACS must be dismissed since the agency lacks the power to sue or be sued."), *aff'd*,

283 F. App'x 877 (2d Cir. 2008); *Harrison v. New York City Admin. for Children's Servs.*, No.

02-CV-0947, 2003 WL 21640381, at *6 (S.D.N.Y. July 7, 2003) (dismissing claims against ACS

because "[t]he New York City Charter provides that all actions and proceedings for the recovery

of penalties for the violation of any law shall be brought in the name of the City of New York

and not in that of any agency, except where otherwise provided by law" (alteration, citation and

internal quotation marks omitted)).

Plaintiff admits in her Amended Complaint that "[t]he members of New York City Administration for Children Services (ACS)[] are agents and employees of the government of the City of New York." (Am. Compl. ¶ 12.) Counsel also conceded at oral argument that ACS is not a suable entity. (Tr. 38:24–39:12.) Since ACS cannot be sued and the claims against Richter are deemed to be claims against ACS, all of Plaintiff's claims against ACS and against Richter were dismissed.

### c. Due Process Claim

Plaintiff's due process claim is not entirely clear. Plaintiff appears to argue that she was denied due process when ACS failed to reinvestigate the report of abuse/maltreatment against her after ACS determined at some point that its initial observations and investigation were incorrect. (Am. Compl. ¶ 28(A).) At oral argument counsel clarified that Plaintiff is asserting a stigma plus procedural due process claim as a result of her listing on the Central Register based on the deprivation of her liberty interests in seeking employment and being a foster parent. (Tr. 14:14–23.) Defendants argue that Plaintiff's due process claim fails because she fails to plead an actual liberty interest, and she was not deprived of an interest without sufficient process. (Def. Mem. 3.)

"In order to establish a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected property or liberty interest and was deprived of it without due process." *Palacio v. Pagan*, 345 F. App'x 668, 669 (2d Cir. 2009); *see also J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (stating the elements of procedural due process); *Looney v. Black*, 702 F.3d 701, 706–07 (2d Cir. 2012) (same); *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 545 (E.D.N.Y. 2013) (same). "In order to do this, a plaintiff must 'first identify a

property right [or liberty interest], second show that the government has deprived him of that right [or interest], and third show that the deprivation was effected without due process.'" *J.S.*, 714 F.3d at 105 (alteration and citations omitted).

### i. Deprivation of a Liberty Interest

"Although damage to one's reputation is not by itself sufficient to invoke the procedural protection of the Due Process Clause, [a plaintiff] can demonstrate infringement of a protected liberty interest by showing that inclusion of her name on the [Central Register] resulted in 'stigma plus.'" *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3–4 (2d Cir. 2013). A stigma plus claim requires that a plaintiff show that she suffered a "'stigma' resulting from the defamatory character of [a government statement] combined with some other state-imposed alteration in [the plaintiff's] legal status." *Id.* at 4 (citing *Paul v. Davis*, 424 U.S. 693, 708–09 (1976)); *see also Hefferan v. Corda*, 498 F. App'x 86, 89 (2d Cir. 2012) ("A defamation action can be grounded in 42 U.S.C. § 1983 when th[e] plaintiff can demonstrate a stigmatizing statement plus a deprivation of a tangible interest." (alteration in original) (citation and internal quotations mark omitted)); *Kalderon v. Finkelstein*, 495 F. App'x 103, 107 (2d Cir. 2012) ("In order to state a claim for deprivation of an intangible legal right to one's reputation, commonly known as a 'stigma plus' claim, a plaintiff must allege facts showing both '(1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that . . . she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" (alterations in original) (quoting *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005)); *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (discussing the two part test); *Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) ("'Stigma plus' refers to a claim brought for injury to one's reputation (the

7

stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus),

without adequate process." (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003));

*Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) ("[A]n action can be grounded in 42 U.S.C. § 1983

when that plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible

interest.'" (quoting *Algarin v. Town of Walkill*, 421 F.3d 137, 138 (2d Cir. 2005)); *Valmonte v.

Bane*, 18 F.3d 992, 999 (2d Cir. 1994) (to show stigma plus to establish a constitutional

deprivation, "loss of reputation must be coupled with some other tangible element in order to rise

to the level of a protectible liberty interest").  "In addition, the 'defamatory statement must be

sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff,

and only in private, ordinarily does not implicate a liberty interest.'"  *Kalderon*, 495 F. App'x at

107 (quoting *Velez*, 401 F.3d at 87).

Plaintiff's listing on the Central Register satisfies the "stigma" element of a stigma plus

claim.  *See Valmonte*, 18 F.3d at 1001 (holding that the plaintiff was subjected to "stigma plus"

where the Central Register listing defamed her and placed a tangible burden on her employment

prospects); *Tafuto v. N.Y.S. Office for Children and Family Svcs.*, No. 08-CV-8433, 2012 WL

4459803, at *6 (S.D.N.Y. Sept. 25, 2012) (inclusion on Central Register gives rise to

stigmatization (citing *Valmonte*, 18 F.3d at 1000)); *Finch v. N.Y.S. Office of Children and Family

Svcs.*, 499 F. Supp. 2d 521, 534 (2007) ("indication" on the Central Register satisfies "stigma"

requirement).

The "plus" requirement of a "stigma plus" claim requires a material state-imposed burden

or alteration of a plaintiff's status or rights.  *See McCaul*, 514 F. App'x at 4 (stigma must be

combined with "state-imposed alteration in [the plaintiff's] legal status" (citing *Paul*, 424 U.S. at

708–09)); *Valmonte*, 18 F.3d at 999 (holding that "a plaintiff must show . . . a material state-

8

imposed burden or state-imposed alteration of the plaintiff's status or rights").  The injuries that

flow directly from a tarnished reputation cannot, standing alone, satisfy the "plus" element.  *See*

*Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("'[D]eleterious effects flowing directly

from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus'

doctrine.'" (alteration omitted) (quoting *Valmonte*, 18 F.3d at 1001)); *Tafuto*, 2012 WL 4459803,

at *5 ("To qualify as a 'plus,' the state-imposed burden must be separate from 'the deleterious

effects which flow directly from a sullied reputation.' . . . The impact that defamation might have

on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other

typical consequence of a bad reputation' are not, by themselves, constitutionally cognizable

injuries." (alteration omitted) (quoting *Valmonte*, 18 F.3d at 1001)); *Rankel v. Town of Somers*,

No. 11-CV-6617, 2014 WL 715702, at *15 (S.D.N.Y. Feb. 25, 2014) ("damage that merely

flows from the injury to reputation . . . is insufficient to state a claim for stigma-plus" (citing

*Sadallah*, 383 F.3d at 39)).

   Burdens that have been found to satisfy the "plus" element of a stigma plus claim include

the loss of a protected property interest or a statutorily-granted privilege, such as termination of

government employment, loss of the right to purchase alcohol, loss of the right to public

education, and deprivation of property.  *See Balentine v. Tremblay*, --- F. App'x ---, ---, 2014

WL 519653, at *3 (2d Cir. Feb. 11, 2014) ("Examples of tangible interests recognized by the

Supreme Court include the loss of the right to purchase alcohol, foreclosure of the freedom to

take advantage of government employment, and the extinguishment of the right to public

education." (citations omitted)); *Sadallah*, 383 F.3d at 38 ("Burdens that can satisfy the 'plus'

prong under this doctrine include the deprivation of a plaintiff's property, and the termination of

a plaintiff's government employment." (citations omitted)); *Tafuto*, 2012 WL 4459803, at *5

("The clearest examples of burdens that satisfy the 'plus' prong are those that entail the loss of a protected property interest like termination of government employment, or loss of statutorily-granted privileges." (citing *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) and *Greenwood v. N.Y. Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998)).

Plaintiff argues that she possessed a liberty interest in seeking employment and being a foster parent, and that the "plus" element is satisfied based on the tangible burden placed on these interests. Plaintiff also argues that her employment was burdened because ACS discussed the allegations against her with unnamed coworkers and she was forced to work under supervision and prevented from taking children on field trips or being a "lead" teacher while the report against her was "indicated." For the reasons set forth below, the Court found that Plaintiff arguably established a liberty interest in her ability to foster children.

### 1.  Seeking Employment

Plaintiff has failed to allege that her indication on the Central Register placed a tangible burden on her ability to seek employment sufficient to meet the "plus" element of her stigma plus claim. Courts in this Circuit have found that the requirement that certain potential employers consult the Central Register to determine if a prospective employee is listed as being "indicated" for child abuse or maltreatment before hiring the employee imposes a burden on the prospective employee's employment prospects by operation of law. *See Valmonte*, 18 F.3d at 1001; *Finch*, 499 F. Supp. 2d at 534. A plaintiff need not allege that she applied for employment in the child care field and was denied on the basis of her indication; it is sufficient that the plaintiff allege that she *would have* sought such employment, but for her presence on the Central Register. *See McCaul*, 514 F. App'x at 3–4 (assessing whether the plaintiff alleged that she would have sought a job involving children and senior citizens or to foster or adopt a child but

10

for her listing on the Central Register in order to satisfy the "plus" element (citing *Valmonte*, 18 F.3d at 999)); *Valmonte*, 18 F.3d at 999 (finding plus element met by allegation that plaintiff, a paraprofessional in the school system, would have looked for a position in the child care field but for her presence on the Central Register).

However, courts in the Second Circuit require a plaintiff to plead more than just the ability of the listing to impede the plaintiff's employment opportunities; a plaintiff must plead, at least, that they would have sought a job or to foster or adopt a child but for their inclusion on the Central Register.  *See, e.g.*, *McCaul*, 514 F. App'x at 3–4 (dismissing stigma plus substantive due process claim for failure to allege a tangible burden to satisfy the "plus" element where the plaintiff claimed her listing on the Central Register impeded her ability to pursue a career around children and senior citizens, to become a foster parent and to adopt a child, but failed to allege that she had sought or would have sought a job involving children and senior citizens or to foster or adopt a child but for her listing on the Central Register); *Powell v. Johnson*, No. 11-CV-1471, 2012 WL 4052261, at *4–6 (N.D.N.Y. Jan. 9, 2012) (finding that the plaintiff, about whom a report was made to the Central Register, which report was investigated and found to be "unfounded," was "unlikely" to be able to assert a protectable liberty interest where plaintiff included no allegations in her complaint that her child daycare license or registration were affected by the investigation); *Yuan v. Rivera*, No. 96-CV-6628, 1998 WL 63404, at *5 (S.D.N.Y. Feb. 17, 1998) (finding that plaintiff listed in the Central Register who alleged that defendants interfered with her ability to obtain employment and that she suffered the loss of employment possibilities failed to satisfy the "plus" element where she worked as an interpreter and failed to allege that she had been foreclosed from certain employment because of the information on the Central Register).

11

Plaintiff alleged in her Amended Complaint that as a result of her name being placed on the Central Register, she "could not apply for a job even if she wanted to because the 'Indication' would show." (Am. Compl. ¶ 28(C).) At oral argument, counsel reiterated that Plaintiff "couldn't apply for a job even if she wanted to apply for a job because . . . it was going to come out that she was indicated." (Tr. 14:16–18.) However, Plaintiff did not allege in her Amended Complaint, nor did counsel at oral argument represent that Plaintiff could allege, if allowed to further amend the Complaint, that Plaintiff desired to apply for other employment or *would have* sought other employment, but for her inclusion on the Central Register. Plaintiff therefore has not alleged a tangible burden on her ability to seek employment sufficient to meet the "plus" element of her stigma plus claim. *See McCaul*, 514 F. App'x at 3–4; *Valmonte*, 18 F.3d at 999.

## 2.  Fostering Children

Based on counsel's representation at oral argument, Plaintiff has alleged that her indication on the Central Register placed a tangible burden on her ability to foster children sufficient to meet the "plus" element of her stigma plus claim. Plaintiff did not allege in her Amended Complaint that she sought to foster a child during the time there was a report in the Central Register indicating she had engaged in child abuse or maltreatment. However, at oral argument Plaintiff's counsel clarified that Plaintiff did not "reapply for her status as a foster parent" because of her inclusion on the Central Register. (Tr. 26:15–17.) The Court understands that if allowed to amend the Amended Complaint, Plaintiff would allege that but for her inclusion on the Central Register, she would have applied to renew her status as a foster parent. Plaintiff has therefore arguably suffered a tangible burden on her ability to foster children. As such, the Court will assume for purposes of this motion that Plaintiff can plead a tangible burden

on her ability to foster children sufficient to meet the "plus" element of her stigma plus claim. *See McCaul*, 514 F. App'x at 3–4.

### 3. Discussions with Coworkers and Changes in Employment

In her Amended Complaint Plaintiff alleged that ACS discussed the allegations against her with unnamed coworkers, (Am. Compl. ¶ 18), and that she was forced to work under supervision and prevented from taking children on field trips or being a "lead" teacher while the report against her was "indicated," (*id.* ¶ 15).[4]  None of these allegations support Plaintiff's attempt to meet the "plus" element of her stigma plus claim.  Plaintiff's claim that ACS discussed the allegations against her with Plaintiff's coworkers lends additional factual support to the "stigma" element of her claim, as it may have damaged her reputation, but does not show that she was deprived of any tangible interest resulting from that stigma to meet the "plus" element.  Similarly, Plaintiff's claim that she was forced to work under supervision and therefore prevented from taking children on field trips or being a "lead" teacher does not meet the "plus" element, as the Second Circuit requires a significant alteration of Plaintiff's employment status in order to satisfy this element, and has found significantly more burdensome alterations in the employment context insufficient.  *See, e.g.*, *Patterson v. City of Utica*, 370 F.3d 322, 332 (2d Cir. 2004) (holding that a plaintiff who was rehired two weeks after being terminated did not state a stigma plus claim because "his time off the job is more analogous to a suspension than a termination of employment" and "cannot, as a matter of law, be viewed as a significant alteration of plaintiff's employment status"); *Dobosz v. Walsh*, 892 F.2d 1135, 1140 (2d Cir. 1989) (holding a five-month suspension of police officer not a sufficient "plus" factor to give rise to a protected liberty interest when he was later reinstated with back pay).  District courts in this

---

[4]  Plaintiff did not make these arguments at oral argument of the motion.

Circuit have held similarly.  *See Walsh v. Lebanon Bd. of Educ.*, No. 11-CV-1947, 2013 WL

425092, at *6 (D. Conn. Feb. 4, 2013) (dismissing stigma plus claim based on the plaintiff's

suspension without pay because "suspension without pay is not sufficient to support a claim of a

protected liberty interest"); *Fitzgerald v. City of Troy, N.Y.*, No. 10-CV-451, 2012 WL 5986547,

at *22 (N.D.N.Y. Nov. 28, 2012) (dismissing stigma plus claim for lack of "significant alteration

of plaintiff's employment status" where Plaintiff was placed on leave and may have lost

overtime opportunities but was not terminated); *Fehlhaber v. Bd. of Educ. of the Utica City Sch.

Dist.*, No. 09-CV-1380, 2010 WL 4386936, at *2–3 (N.D.N.Y. Oct. 29, 2010) (dismissing

stigma-plus claim for failure to meet "plus" requirement where plaintiff was suspended and upon

his return suffered "significantly reduced" job responsibilities).  Neither ACS's discussions with

Plaintiff's coworkers or the supervision of her duties, or the combination of actions, are

sufficient to satisfy the "plus" element.

### ii.   Deprivation of Proper Process

Assuming that Plaintiff can allege a stigma plus liberty interest premised on her inability

to renew her foster parent status, Plaintiff's due process claim nevertheless fails because Plaintiff

was not deprived of any process by Defendants.  Plaintiff alleges that she was deprived of due

process because Defendants negligently conducted the investigation of the allegations against

her, resulting in an "indicated" report that had no rational basis and without which her name

would not have been placed in the Central Register and she would not have had to wait 21

months for a hearing to clear her name.  (Pl. Opp'n 9.)  Plaintiff also alleges that Defendants

acted negligently by not correcting the report against her upon determining that the information

causing her to be "indicated" was incorrect.[5]  (*Id.* at 9, 14.)

Plaintiff's challenge to ACS's conduct in investigating the initial complaint and determining that there was some support for the allegations resulting in the "indicated" report fails because Plaintiff's basis for the challenge is ACS's allegedly negligent conduct, (Am. Compl. ¶ 2), which does not rise to the level of a constitutional violation.  Throughout her Amended Complaint Plaintiff challenges ACS's negligent conduct.  According to Plaintiff, Defendants "negligently investigated" the report against her, and "as a result of the negligent actions by . . . ACS[], Plaintiff suffered violations of due process" and her "civil rights were violated as a result of the negligence of [ACS]."  (Am. Compl. ¶ 2; *see also id.* ¶¶ 16, 21, 23, 28(A), 28(D), 28(F), 52, 55, 58, 71, 72.)  Plaintiff also conceded at oral argument that her claims against Defendants about the investigation they conducted are based on Defendants' negligent conduct.  (Tr. 32:23–33:1.)  However "[m]erely negligent conduct does not give rise to claims under the Fourteenth Amendment."  *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citing *Daniels v. Williams*, 474 U.S. 327, 331, 333 (1986)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." (citing *Daniels*, 474 U.S. at 328)); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("In *Daniels,* we held that the Due Process Clause of the Fourteenth

---

[5]  In her Amended Complaint, (Am. Compl. ¶ 17; *see also* Pl. Opp'n 9), and at oral argument, Plaintiff also appeared to challenge the delay between her objection to the report in the Central Register and the hearing which resulted in the removal of the report from the Central Register.  To the extent Plaintiff is challenging the delay between her objection to the "indicated" report and the hearing, Plaintiff's claim fails since, as counsel admitted at oral argument, (Tr. 33:18–34:4; *see also* Tr. 35:13–38:23), the process governing any objection to the information in the Central Register is administered by the State of New York, not ACS or the City.  *See* N.Y. Soc. Serv. Law § 422(8) (setting forth the process for seeking amendment of an "indicated" report); *Finch v. City of New York*, 591 F. Supp. 2d 349, 360 (S.D.N.Y. 2008) (setting forth the process, administered by the State, for addressing objections to the information in the Central Register).  Thus, Plaintiff cannot maintain a challenge to the delay between her objection and hearing against the City.

Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property."); *Daniels*, 474 U.S. at 328, 332 ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property. . . .  To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law."); *Wantanabe Realty Corp. v. City of New York*, 159 F. App'x 235, 237 (2d Cir. 2005) ("In order to show a violation of procedural due process rights, a plaintiff must show an intent more culpable than mere negligence." (citing *Daniels*, 474 U.S. at 328); *Piovanetti-Mickersen v. Nikonoff*, No. 11-CV-5006, 2011 WL 5400157, at *2 (E.D.N.Y. Nov. 4, 2011) ("[M]erely negligent conduct causing unintended injury to life, liberty, or property is not sufficient to state a claim under the Due Process Clause of the United States Constitution." (citing *Daniels*, 474 U.S. at 333 and *Davidson*, 474 U.S. at 344)).  According to Plaintiff, Defendants negligently investigated the report against her, and the violation of due process that she suffered was a result of Defendants' negligent failure to "review facts."  (Am. Compl. ¶¶ 2, 52; *see also id.* ¶¶ 16, 21, 23, 28(A), 28(D), 28(F), 52, 55, 58, 71, 72.)  Plaintiff's allegations of negligence by Defendants are insufficient to state a claim for a constitutional violation of procedural due process.

Plaintiff also argued at oral argument that Defendants concluded that the report of abuse was supported by evidence and therefore "indicated," despite knowing there was no credible evidence of wrongdoing by Plaintiff, suggesting that Defendants engaged in intentional conduct. (Tr. 8:11–9:1.)  Plaintiff also made similar allegations in her Amended Complaint.  (*See* Am. Compl. ¶ 73 ("The failure of Defendant[s] to conduct the proper investigation and re-investigate once they found out they were wrong . . . caused Plaintiff to suffer injury as a result of their gross

negligence.").)  However, Plaintiff has not alleged any facts in support of this conclusory

allegation, and, based on the facts as argued by counsel at oral argument, Plaintiff cannot

factually support this allegation.

Pursuant to New York Social Services Law, if ACS's "investigation determines that

some credible evidence of the alleged abuse or maltreatment exists," the report is "indicated."

N.Y. Soc. Serv. Law § 412(7); *see also id.* § 424 (setting forth investigation procedures); *Tafuto*,

2012 WL 4459803, at *1 ("Where . . . the investigation determines that some credible evidence

of the alleged abuse or maltreatment exists, the report is marked indicated." (citation and internal

quotation marks omitted)); *Van Oss v. New York*, 783 F. Supp. 2d 681, 686 (S.D.N.Y. 2011) ("A

report is 'indicated' if an investigation determines that there is some credible evidence of the

alleged abuse/maltreatment." (citing N.Y. Soc. Serv. Law § 412(7)).  If, on the other hand, there

is no credible evidence of the alleged abuse or maltreatment, the report is deemed to be

unfounded.  *See Van Oss*, 783 F. Supp. 2d at 686 ("A report is 'unfounded' if an investigation

determines that there is no credible evidence of alleged abuse/maltreatment." (citing N.Y. Soc.

Serv. Law § 412(6)); *Finch*, 591 F. Supp. 2d at 354 ("If there is no credible evidence of abuse or

maltreatment, ACS classifies the report as 'unfounded' . . . .").  If the subject of an "indicated"

report objects to the "indication" and requests that it be amended, the New York State Office of

Children and Family Services ("OCFS") conducts a review to determine "whether there is a fair

preponderance of the evidence to find that the subject committed the act or acts of child abuse or

maltreatment giving rise to the indicated report" and whether such acts could be relevant and

reasonably related to child-care employment or licensing as defined by statute.  N.Y. Soc. Serv.

Law § 422(8)(a)(ii); *Van Oss*, 783 F. Supp. 2d at 686–87 ("The OCFS reviews all of the

materials forwarded by the [Child Protective Service agency] (the 'administrative review' or

'AR') and determines whether there is a fair preponderance of evidence to find that the subject committed the act(s) of child abuse/maltreatment giving rise to the indicated report.").

If the report is not amended within ninety days of the request, the case is referred to an ALJ for a hearing, N.Y. Soc. Serv. Law § 422(8)(b)(i), and the ALJ is required to amend the report to indicate that it is unfounded unless ACS shows by a fair preponderance of the evidence that the subject of the report "committed the act or acts of child abuse or maltreatment giving rise to the indicated report," and that the act is relevant and reasonably related to child-care employment or licensing. *Id.* § 422(8)(c)(ii); *Van Oss*, 783 F. Supp. 2d at 687 ("All 422 hearings address the issue of whether there is a fair preponderance of evidence to support the finding of an indicated report of child abuse/maltreatment. Upon a determination that the subject has been shown by a fair preponderance of evidence to have committed the act(s) of child abuse/maltreatment, the ALJ then determines, based on the OCFS Guidelines, whether such acts are R[elevant] & R[easonably related]." (citing N.Y. Soc. Serv. Law § 422(8)(c)(ii)).

Thus, only a bare minimum of evidence was needed by ACS to find the report "indicated." *See Lee TT. v. Dowling*, 87 N.Y.2d 699, 711 (1996) (describing the "some credible evidence" standard as a "minimal standard of proof" that can be satisfied with a "'bare minimum' of evidence"); *see also Valmonte*, 18 F.3d at 1004 ("[t]he 'some credible evidence' standard . . . merely requir[es] the local [Department of Social Services] to present the bare minimum of material credible evidence to support the allegations against the subject"). Moreover, ACS was not required to weigh any conflicting evidence. *See Valmonte*, 18 F.3d at 1004 ("[t]he 'some credible evidence' standard does not require the factfinder to weigh conflicting evidence"); *Kenific v. Oswego Cnty.*, No. 07-CV-0212, 2010 WL 2977267, at *11, n.18 (N.D.N.Y. July 23, 2010) (credible evidence may consist, in part or whole, of hearsay

(collecting cases)); *Lee TT.*, 87 N.Y.2d at 711 (Some credible evidence standard "imposes no duty on the fact finder to weigh conflicting evidence, no matter how substantial, and allows a report to be indicated if only one out of several believable items of evidence supports it.").

At oral argument counsel for Plaintiff asserted that because of the minimal claim by the child against Plaintiff, and because early on in the investigation ACS knew that Plaintiff was not at the day care at the time the child was dropped-off that day, and that Plaintiff arrived later that morning, ACS knew that Plaintiff could not have committed the abuse/maltreatment as reported. Counsel conceded that on the day of the alleged abuse, the child stated that "Ms. Barbara" (Plaintiff's first name) grabbed him. Counsel argued that this was insufficient to sustain a finding that the report was "indicated," because of the additional conflicting evidence that was allegedly available. (Tr. 5:21–24; 7:10–13.) Counsel admitted that the standard of proof required to make such a finding is minimal, *see Valmonte*, 18 F.3d at 1004; *Lee TT.*, 87 N.Y.2d at 711, but argued that where ACS discovers contrary evidence suggesting that the subject did not abuse or maltreat the child in question, ACS is under an obligation to go beyond simply looking for some evidence of abuse/maltreatment, (Tr. 10:11–20). Contrary to counsel's claim, ACS was not required to weigh the available evidence. Thus, accepting the truth of the factual allegations made by counsel at oral argument — that the evidence was minimal and ACS had contrary evidence that suggested Plaintiff did not engage in abuse/maltreatment of the child — Plaintiff cannot sustain a due process violation claim as, based on the evidence counsel concedes ACS knew when it conducted its investigation, ACS was in full compliance with the law. *See Valmonte*, 18 F.3d at 1004; *Lee TT.*, 87 N.Y.2d at 711. Accepting all facts alleged by Plaintiff's counsel and drawing all reasonable inferences, Plaintiff has failed to show that ACS engaged in intentional unlawful conduct by concluding that the report against Plaintiff was "indicated." The

19

suggestion by the injured child that Plaintiff was responsible for the child's injuries provided some credible evidence supporting an "indicated" report, and ACS was not required to weigh this evidence against any conflicting evidence uncovered during the investigation.[6]  *See Valmonte*, 18 F.3d at 1004; *Lee TT.*, 87 N.Y.2d at 711.  Plaintiff did not and cannot allege facts from which the Court can infer that Defendants engaged in conduct more culpable than negligence when investigating the report of abuse or maltreatment against her.

### d.  Municipal Liability

As clarified at oral argument, Plaintiff is asserting a municipal liability claim on the basis of a persistent and widespread practice by Defendants of conducting negligent investigations, and a failure to train and supervise Defendants' employees.  The dismissal of Plaintiff's underlying constitutional claim for violation of procedural due process requires dismissal of Plaintiff's municipal liability claim, as Defendants cannot be liable where there is no underlying constitutional violation.  *Johnson v. City of New York*, --- F. App'x ---, ---, 2014 WL 223432, at *1 (2d Cir. Jan. 22, 2014) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), must also fail." (citation omitted)); *Kajoshaj v. New York City Dep't of Educ.*, --- F. App'x ---, ---, 2013 WL 5614113, at *4 (2d Cir. Oct. 15, 2013) (affirming dismissal of the plaintiffs' *Monell* claim against the municipal defendant because plaintiff failed to plausibly plead a constitutional violation by the municipality's employees);

---

[6]  It is also unclear when ACS allegedly learned about this conflicting information.  Plaintiff alleges both that ACS knew of the conflicting information before making their report of "indicated," (Tr. 8:11–9:1), and that ACS learned of this information after their report but should have reinvestigated and corrected their findings, (Am. Compl. ¶¶ 28(A), 64, 73).  To the extent that Plaintiff alleges that ACS learned of this information after the report was "indicated" and should have conducted a reinvestigation, the statutory process does not impose an obligation on Defendants to reinvestigate or reopen an investigation.  *See generally* N.Y. Soc. Serv. Law § 422.  Plaintiff's remedy was to object to the "indicated" report, which she did.

*Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable."); *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Mendoza v. County of Nassau,* No. 11-CV-02487, 2012 WL 4490539, at *7 (E.D.N.Y. Sept. 27, 2012) ("When there is no underlying constitutional violation, there can be no municipal liability under *Monell.*").

Even if Plaintiff had a viable underlying constitutional claim, Plaintiff's municipal liability claim would have nevertheless been dismissed because Plaintiff failed to sufficiently plead a municipal liability claim.  In order to sustain a claim for relief under § 1983 against a municipal defendant, a plaintiff must show the existence of an officially adopted policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *see Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007))); *see also Pierre v. City of New York*, No. 12-CV-9462,

2014 WL 56923, at *10 (S.D.N.Y. Jan. 7, 2014) ("[A] plaintiff must establish both a violation of his or her constitutional rights and that the violation was caused by a municipal policy or custom; that is, that the policy or custom was the actual 'moving force' behind the alleged wrongs."). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. ---, ---, 131 S. Ct. 1350, 1359 (2011) (citations omitted); *see also Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992) ("discriminatory practices of city officials [that] are persistent and widespread" may "be so permanent and well settled as to constitute a 'custom or usage' with the force of law" (citation and internal quotation marks omitted)).  Municipal liability "may also arise if [a] municipal defendant failed to train employees to avoid the behavior in question and if the failure rises to the level of deliberate indifference." *Richardson v. City of New York*, 326 F. App'x 580, 581 (2d Cir. 2009) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Lieberman v. City of Rochester*, --- F. App'x ---, ---, 2014 WL 888977, at *2 (2d Cir. Mar. 7, 2014) ("*Monell* also recognizes liability where a municipality's failure to train its employees amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." (alteration, citation and internal quotation marks omitted)).

Plaintiff has alleged a municipal liability claim premised on a persistent and widespread practice by ACS and a failure to train its employees.  Plaintiff's municipal liability claim fails because Plaintiff has only alleged a single incident of alleged unconstitutional activity by ACS employees which is insufficient to establish either a widespread practice or deliberate indifference for a failure to train claim.  Although Plaintiff makes the conclusory allegation that Defendants "routinely" conduct faulty investigations, (Am. Compl. ¶ 54), Plaintiff's Amended

Complaint does not contain any specific facts suggesting that anyone other than Plaintiff has been subjected to a negligent investigation by Defendants.[7]  As the Second Circuit has made clear, "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citing *Villante v. Dep't of Corr.*, 786 F.2d 516, 519 (2d Cir. 1986)), *cert denied*, 571 U. S. ---, 134 S. Ct 125 (Oct. 7, 2013); *see also Henderson v. Town of Greenwich*, 317 F. App'x 46, 47 (2d Cir. 2009) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." (quoting *Oklahoma City*, *Oklahoma City v. Turtle*, 471 U.S. 808, 823–824 (1985)); *Reynolds v. Giuliani*, 506 F.3d 183, 207 (2d Cir. 2007) ( to successfully impose municipal liability a plaintiff must show that her constitutional violation "occurred as a result of a [municipal] policy rather than as a result of isolated misconduct by a single actor" (citation omitted)).

### i.   Persistent and Widespread Practice

Plaintiff alleged in her Amended Complaint that Defendants "routinely conduct[] faulty investigations and avoid[] Fair Hearings."  (Am. Compl. ¶ 54.)  To sustain a persistent and widespread practice claim as Plaintiff alleges here, the single incident of Plaintiff's own allegedly negligent investigation is not sufficient to impose municipal liability without additional allegations from which this Court may infer that it was caused by a practice so widespread as to practically have the force of law.  *See, e.g.*, *Giaccio v. City of New York*, 308 F. App'x 470, 472

---

[7]  At oral argument and in Plaintiff's opposition brief, Plaintiff referenced the dispute and later settlement in *Finch v. N.Y.S. Office of Children and Family Svcs.*, 499 F. Supp. 2d 521 (2007), as evidence of other constitutional violations and Defendants' knowledge thereof. However, as counsel for Plaintiff admitted at oral argument, the *Finch* case did not concern the quality of the initial investigations conducted by ACS and whether such investigations are negligently conducted, but rather the delayed resolution of objections to reports that had been "indicated" on the Central Register.  *Finch*, 499 F. Supp. 2d at 524.  *Finch* therefore does not provide evidence of other investigations negligently conducted by ACS.

(2d Cir. 2009) (affirming summary judgment in favor of defendants dismissing *Monell* claim where plaintiff "identifie[d], at most, only four examples" of constitutional violations, and "[t]his evidence falls far short of establishing a practice that is so 'persistent or widespread' as to justify the imposition of municipal liability" (citation and internal quotation marks omitted)); *Fierro v. New York City Dep't of Educ.*, No. 13-CV-3637, 2014 WL 425946, *6 (S.D.N.Y. Feb. 4, 2014) (granting motion to dismiss *Monell* claim because allegations that "discriminatory practices were so persistent and widespread that even if they were not the official custom or practice of the DOE, they constitute the constructive acquiescence of the policymakers" were conclusory); *Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394, at *16 (E.D.N.Y. Sept. 24, 2013) (dismissing *Monell* claim where plaintiff's allegations were "limited to the actions of specific detectives in a single police unit and factually supported only by a pleader's perceptions of his own experience" and therefore showed "nothing like the kind of 'widespread' and 'permanent' unconstitutional practices or customs that *Monell* implicates").  In light of Plaintiff's failure to allege instances of alleged unconstitutional activity other than the Defendants' single actions in her case, Plaintiff failed to allege a persistent and widespread practice.

### ii.   Failure to Train

Plaintiff alleged in her Amended Complaint that Defendants were negligent "in failing to properly retain and train their employees," (Am. Compl. ¶ 28(D)), and clarified in her opposition to the motion to dismiss that she intended to assert a municipal liability claim based on ACS's failure to train its employees, (Pl. Opp'n 16).  To sustain a municipal liability failure to train and supervise claim, a Plaintiff must show that the municipality's failure to train its employees amounts to "deliberate indifference to the constitutional rights of [its] citizens."  *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1993); *see also Lieberman*, --- F. App'x at ---, 2014 WL 888977, at *2 ("*Monell* also recognizes liability where a municipality's failure to train its

employees amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." (alteration, citation and internal quotation marks omitted)); *Richardson*, 326 F. App'x at 581 (Municipal liability may "arise if [a] municipal defendant failed to train employees to avoid the behavior in question and if the failure rises to the level of deliberate indifference." (citation omitted)).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at ---, 131 S.Ct. at 1360 (internal quotation marks omitted)[8]; *see also Simms v. City of New York*, 480 F. App'x 627, 630 (2d Cir. 2012) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (quoting *Connick*, 563 U.S. at ---, 131 S. Ct. at 1360)); *Vazquez-Mentado v. Buitron*, No. 12-CV-0797, 2014 WL 318329, at *6 (N.D.N.Y. Jan. 29, 2014) (same).  In light of Plaintiff's failure to allege instances of alleged unconstitutional activity other than the Defendants' single actions in her case, Plaintiff failed to demonstrate deliberate indifference for purposes of a municipal liability failure to train claim.

Plaintiff's failure to train or supervise claim also fails because Plaintiff did not allege the remaining required elements.  The Second Circuit has identified three elements that are required in order to satisfy the "deliberate indifference" standard.  *See Walker*, 974 F.2d at 297; *see also Stewart v. Cnty. of Nassau*, 12-CV-0320, 2014 WL 204615, at *4 (E.D.N.Y. Jan. 17, 2014). First, plaintiff must establish that "a policymaker knows 'to a moral certainty' that [his or] her employees will confront a given situation."  *Walker*, 974 F.2d at 297; *see also Stewart*, 2014 WL

---

[8]  While the Supreme Court left open in *Connick* the possibility that a single incident could, in rare circumstances, give rise to a failure to train or supervise claim, the Court cautioned that only a "narrow range" of circumstances would support such "rare" single-incident liability, where the "unconstitutional consequences of failing to train [were] patently obvious."  *Connick v. Thompson*, 563 U.S. ---, 131 S. Ct. 1350, 1361 (2011).  No such allegations have been pled here.

204615, at *4.  Second, plaintiff must demonstrate that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation."  *Walker*, 974 F.2d at 297; *see also Stewart*, 2014 WL 204615, at *4.  Finally, plaintiff must prove that "the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights."  *Walker*, 974 F.2d at 297; *see also Stewart*, 2014 WL 204615, at *4.  "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury."  *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *see also Dickerson v. Prison Health Servs. Inc.*, 495 F. App'x 154, 157 (2d Cir. 2012) (citing *Dwares* for the proposition that "[t]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury" (quoting *Dwares*, 985 F.2d at 100)).  Plaintiff's allegation that lack of training caused her to endure a negligent investigation of the child abuse and maltreatment report against her is no more than a "simple recitation that there was a failure to train municipal employees" and failed to meet the pleading requirements for a failure to train municipal liability claim.

### e.  State Law Claims

"District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Pension Ben. Guar. Corp.*, 712 F.3d at 727 (citations and internal quotation marks omitted); *see also One Communications Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims"); *Sullivan v. City of New York*, No. 10-CV-0038, 2011 WL 3806006, at *6 (S.D.N.Y. Aug. 29, 2011) ("[W]here federal claims are dismissed before trial, the state [claims] should be dismissed as well." (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998))).  At oral argument the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims, and the state law claims were therefore dismissed without prejudice.

### III. Conclusion

For the foregoing reasons the Court granted Defendants' motion to dismiss Plaintiff's due process and municipal liability claims for failure to state a claim.  The Court also declined to exercise supplemental jurisdiction and dismissed Plaintiff's state law claims for negligence, negligent hiring and retention and negligent infliction of emotional distress without prejudice. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 24, 2014
       Brooklyn, New York